UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

BRUCE RISHTON )
)
v. ) NO. 2:07-CV-78
)
SULLIVAN COUNTY SHERIFF'S )
DEP'T, SULLIVAN COUNTY, )
TENNESSEE/ STEVE GODSEY, )
and SULLIVAN COUNTY )
DETENTION CENTER )

**MEMORANDUM and ORDER**

Acting *pro se*, state prisoner Bruce Rishton brings this civil rights complaint under 42 U.S.C. § 1983, claiming that he was subjected to unconstitutional conditions in the Sullivan County Detention Center (SCDC), where he was formerly confined. Plaintiff is **ASSESSED** the civil filing fee of $350.00.

Accordingly, the custodian of plaintiff's inmate trust account at the institution where he now resides shall submit, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to plaintiff's' inmate trust account or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B).

Thereafter, the custodian shall submit twenty percent (20%) of plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $350.00 has been paid to the Clerk's Office. *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). All payments should be sent to: Clerk, USDC; 220 West Depot Street, Suite 220; Greeneville, TN 37743. To ensure compliance with the fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this memorandum and order to Gayle Ray, Commissioner of the Tennessee Department of Correction, and to the custodian of inmate accounts at the institution where plaintiff is now confined.[1]

In the first of two claims raised in his complaint, plaintiff alleges that, from August 29, 2005 to December 6, 2006, he was forced to sleep on a mat on the floor in a sixteen-person cell, which routinely housed some thirty to forty inmates. This condition, plaintiff claims, is the result of overcrowding in the SCDC. Plaintiff now is being treated for back pain (caused by muscle spasms), which he attributes to these sleeping arrangements at the SCDC because he never experienced this condition before being forced to sleep on hard concrete floors. Plaintiff next claims that other inmates

---

[1] Plaintiff has notified the Court that he is presently housed in the Southeastern Tennessee State Regional Correctional Facility in Pikeville, Tennessee.

2

often threw cartons of urine into his cell and referred to the prisoners in his cell—occupied only by those who had been charged or convicted of sex crimes—as "Baby-rapers." He complained to the guards about these misdeeds, but nothing was ever done. Indeed, the same inmates who tossed urine into the cell were permitted to serve plaintiff coffee and Kool-Aid, though he never drank the beverages because he had "no clue" as to whether the drinks had been tampered with by the servers.

Plaintiff filed grievances concerning these matters, but the problems he reported were not solved. He has also submitted copies of three of those grievances, which reflect that he offered the facts underlying his claims to the SCDC authorities for resolution. Plaintiff maintains that exposing him to the complained of conditions violated his rights as secured by the Eighth and Fourteenth Amendments to the United States Constitution.

The Court must now review the complaint to determine whether it states a claim entitling plaintiff to relief or is frivolous or malicious or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A; *McGore*, 114 F.3d at 607. If so, this suit must be dismissed.

To state a claim under 42 U.S.C. § 1983, plaintiff must show: (1) that he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States of America and (2) that the deprivation was caused by a person acting

3

under the color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978).

At the outset, two defendants named by plaintiff are non-suable entities. The SCDC is a building and neither it nor the Sullivan County Sheriff's Department are "persons" who can be sued under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 688-90 (1978); *Cage v. Kent County Correctional Facility*, 1997 WL 225647, at \*\*1 (6th Cir. May 1, 1997) (jail is not a suable entity).

The remaining defendants, captioned as "Sullivan County, Tennessee/ Steve Godsey," are, respectively, a governmental entity and (presumably) its employee or official. A suit against a governmental employee for actions taken pursuant to his official role is treated as a suit against the county itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Plaintiff's complaint states explicitly that he is suing defendant Godsey in his official capacity—not his individual capacity. Sullivan County, however, cannot be held liable for the acts of its employees under a theory of respondeat superior. *Monell*, 426 U.S. at 691.

To prevail in a claim against either defendant Sullivan County or defendant Godsey (in his official capacity), plaintiff must establish that a policy, custom, or practice of Sullivan County has resulted in the deprivation of his constitutionally protected rights. *Id.* at 690-91. Plaintiff does not allege that his sleeping arrangements and consequent injury was a result of an official custom or policy. Because plaintiff has

not alleged that the denial of an elevated bed resulted from a policy, custom, or practice of the County, he has failed to state a claim against these defendants.

Even if plaintiff had alleged that it was Sullivan County policy to force inmates to sleep on floor mats, he would not state a claim for relief. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). An Eighth Amendment claim is composed of two parts: an objective component, which requires plaintiff to show a "sufficiently serious" deprivation, and a subjective component, which requires a showing of a sufficiently culpable state of mind —one of deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994).

Overcrowding, in and of itself, is not necessarily unconstitutional. *Johnson v. Heffron*, 88 F.3d 404, 407 (6th Cir. 1996) (citing *Rhodes v. Chapman*, 452 U.S. 337 (1981)). If overcrowded conditions, however, cause an inmate to be denied the minimal civilized measure of life's basic needs, such as food, warmth, or exercise, this would transgress the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 298, 304 (1991). But, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.*

In the context of a conditions-of-confinement claim, only extreme deprivations can be characterized as punishment prohibited by the Eighth Amendment.

*Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). A prisoner has no right to sleep on an elevated bed. *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986); *see also Hubbard v. Taylor*, 538 F.3d 229, 235 (3d Cir. 2008) (forcing pretrial detainees to sleep on a floor mattress for three to seven months due to overcrowding is not a constitutional violation); *Grissom v. Davis*, 55 Fed. Appx. 756, 758, 2003 WL 343248,*2 (6th Cir. Feb. 12, 2003) (seven-day deprivation of a mattress and bedding did not violate the Eighth Amendment); *Jones v. Toombs*, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996) (two-week deprivation of a mattress is not a constitutional violation); *but see Yelardy v. Taylor*, Civ. No. 03-1032-GMS, 2006 WL 680660 at *8 (D.Del. March 14, 2006) (possible constitutional violation where pretrial detainee is required to sleep on the floor for twenty-two months).[2]

Nonetheless, forcing an inmate to sleep on the floor, in some cases, might qualify as an extreme privation. *Townsend v. Fuchs*, 522 F.3d 765, 774 (7th Cir.2008) (forcing inmates to sleep on a wet and moldy mattress on the floor for fifty-nine days sufficiently serious deprivation); *Foulds v. Corley,* 833 F.2d 52, 54 (5th Cir. 1987) (requiring inmate to sleep in a cold cell on a rat-infested floor states a colorable

---

[2] One circuit, however, has deemed it unconstitutional to require inmates to sleep on a mattress on the floor. *See Lareau v. Manson*, 651 F.2d 96, 105 (2d Cir. 1981); *see also Thomas v. Baca*, 514 F. Supp. 2d 1201, 1216 (C.D. Cal. 2007) (same).

constitutional claim).

That being said, there has been no constitutional violation unless the challenged jail conditions have resulted in "the deprivation of a single, identifiable human need such as food, warmth, or exercise–for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson*, 501 U.S. at 304. No such a circumstance appears to be present in this case.

But if the questioned condition is sufficiently serious, there is nothing from which to draw an inference that the only individual named as a defendant (Godsey) possessed a state of mind of deliberate indifference. *Farmer*, 511 U.S. at 841-42 ("Needless to say, moreover, considerable conceptual difficulty would attend any search for the subjective state of mind of a governmental entity, as distinct from that of a governmental official"). This is so because plaintiff has made no allegations whatsoever against this defendant, and accordingly, this inmate's allegation that overcrowding has forced him to sleep on a mattress on the floor fails to state an actionable claim under the Eighth Amendment.

The same is true of plaintiff's contentions that inmates verbally harass him and toss urine into his cell. On October 23, 2006, Plaintiff filed a grievance (Compl., Attach. No. 1), complaining about the situation and, four days later, received this response from the Shift Supervisor: "If officer [] didn't see them throwing it, how can

7

he do anything about it [?] If we catch them doing it, we will discipline them." Plaintiff then carried his grievance to the Grievance Board, presumably to appeal the Shift Supervisor's response because four days after that, the Grievance Board officer responded: "All shifts have been advised that action will be taken against the <u>cells</u> that do this. We can't single anyone out but we can discipline the entire cell." The grievance establishes that jail officials recognized these problems and did not disregard any potential risk to plaintiff. When jail authorities are aware of a substantial danger to an inmate's health or safety (and the Court does not find any such a risk) and do not disregard it but, instead, take reasonable measures to eliminate or avert the risk, there is no deliberate indifference, "even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 830.

Therefore, this action will be dismissed *sua sponte* by a separate order.

**ENTER**:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE